UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-04239 PA (SKx) | Date | October 27, 2020 |
|---|---|---|---|
| Title | Trina Ray, et al. v. California Department of Social Services, et al. | | |

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| G. Garcia | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:** MOTION FOR PARTIAL SUMMARY JUDGMENT

Before the Court is a Motion for Partial Summary Judgment filed by plaintiffs Trina Ray and Sasha Walker ("Plaintiffs"). (Dkt. No. 132 ("Mot.").) Defendant the County of Los Angeles (the "County") filed an Opposition (Dkt. No. 143) and Plaintiffs filed a Reply (Dkt. No. 144). The Court construed the County's Opposition as the County's own Motion for Summary Judgment (Dkt. No. 148) and allowed Plaintiffs the opportunity to oppose the County's Motion (Dkt. No. 151). Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds this matter appropriate for decision without oral argument.

**I.      Factual and Procedural Background**

The following facts are undisputed. California provides domestic in-home services to the aged, the blind, and the disabled through programs that were initiated by and funded in part by the federal government. Homecare providers such as Plaintiffs help recipients with daily activities including housework, meal preparation, and personal care. Since 1974, these services have been provided under California's In-Home Supportive Services ("IHSS") plan. Cal. Welf. & Inst. Code ("CWIC") §§ 12300-12308 (West 1980). California implements the program through regulations promulgated by the California Department of Social Services ("CDSS"), and the program is administered in part by California counties, including the County. CDSS ensures uniformity across the State by issuing regulations and other guidelines to direct counties in their administrative roles. Id. §§ 12301.

The State, counties, and IHSS recipients all play roles in implementing the IHSS program. See Guerro v. Superior Court, 213 Cal. App. 4th 912, 920-22 (2013). The State sets the rules for the program and delegates day-to-day administration of the program to the counties. The State identifies specific services authorized under the IHSS program, and creates standardized "hourly task guidelines" and a "uniform needs assessment tool" for counties to use in assessing individual service needs and service-hour requirements.. CWIC §§ 12301.1, 12301.2.

Following State guidelines and protocols, counties process a recipient's application for IHSS services, assess a recipient's needs, authorize services and hours, and periodically reassess a recipient's needs. Id. § 12301.1. Counties also provide for delivery of IHSS services to recipients and carry out "quality assurance" including background checks, orientations, and unannounced home visits to confirm service delivery. Id. §§ 12301.24, 12305.7-12305.87.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-04239 PA (SKx) | Date | October 27, 2020 |
|---|---|---|---|
| Title | Trina Ray, et al. v. California Department of Social Services, et al. | | |

Counties have three options for assisting the State. Counties can: (1) hire in-home supportive personnel, (2) contract with a city, county, agency, local health district, or individual, or (3) make direct payment to a recipient for the purchase of services. Id. § 12302. The County uses the third option, known as the Direct Payment Mode. Under the Direct Payment Mode, IHSS providers in the County are paid directly by the State. The State must "perform or ensure the performance of all rights, duties and obligations of the recipient relating to [the] services as required for purposes of unemployment compensation, unemployment compensation disability benefits, workers' compensation, retirement savings accounts, . . . federal and state income tax, and federal old-age, survivors, and disability insurance benefits." Id. § 12302.2(a)(1). This payroll function includes paying or transmitting contributions, premiums or taxes under these programs "on the recipient's behalf as the employer," and making relevant payroll deductions from checks paid directly to providers. Id. §§ 12302.1(a)(2), 12302.2(b). The State is responsible for collecting time cards, maintaining timekeeping records, and issuing paychecks drawn on the State's treasury. Id. § 12300.4.

In addition, each county must act as or establish an employer for purposes of collective bargaining. Id. § 12302.25, subd. (a). If a county establishes a public authority or contracts with a nonprofit consortium, those entities are deemed the employer for purposes of collective bargaining. Id. § 12301.6. In 1997, the County created the Public Assistance Services Counsel ("PASC") to act as the employer of record for collective bargaining, to establish a registry of potential providers interested in working in the IHSS program, and to provide access to training for providers and recipients. The PASC bills the County for its services. The PASC coordinator also provides background checks for the County. However, the State continues to perform payroll services on the recipient's behalf. Id. §§ 12301.6(i)(1), 12302.2(a)(2) ("[c]ontributions, premiums, and taxes shall be paid or transmitted [by the State] on the recipients behalf as the employer.").

Recipients of the IHSS program "retain the right to hire, fire, and supervise the work of any in-home supportive services personnel providing services for them." Id. § 12301.6(c)(2)(B). Recipients are responsible for setting their provider's schedule. In addition, the recipient supervises the provider's work. Providers work at the times selected by the recipient, subject to the recipient's total allotted service hours as determined by the County in accordance with State guidelines. Recipients of personal care services choose their own provider. Id. § 12303.4.

On January 1, 2015, federal regulations changed to provide overtime payments to IHSS providers like Plaintiffs under the Fair Labor Standards Act ("FLSA"). Following this new rule, the California Assembly charged CDSS and other State actors with implementing the new overtime rules. Id. § 12300.4(k). The State shared draft guidance, including All-County Letters, All-County Informational Notices, and Program Manager Letters to guide all 58 counties in implementing the new overtime rules. The State also developed web seminars and videos to train counties and staff on implementation, held FLSA time sheet training, and had monthly meetings where CDSS informed the counties of upcoming changes. The County used the State's letters and training materials to develop handouts, FAQs, and instructions for IHSS providers.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-04239 PA (SKx) | Date | October 27, 2020 |
|---|---|---|---|
| Title | Trina Ray, et al. v. California Department of Social Services, et al. | | |

On June 7, 2017, Plaintiffs filed a putative collective action under Section 216(b) of the FLSA against the State of California and the County. Plaintiffs' Complaint seeks relief for themselves and the putative collective for unpaid overtime wages between January 1, 2015 and February 1, 2016. Plaintiffs originally sued both the State and the County. (See Dkt. No. 1.) Plaintiffs later dismissed the State as a defendant. (See Dkt. No. 29.) Both Plaintiffs and the County now seek summary judgment on the dispositive issue of whether the County is an employer of IHSS providers.

**II.     Evidentiary Objections**

Both Plaintiffs and the County have objected to evidence submitted in connection with the motions for partial summary judgment. Plaintiffs' evidentiary objections to the County's evidence are denied as moot, as the Court does not rely on any evidence submitted by the County that Plaintiffs' objected to. See American Guard Services, Inc. v. First Mercury Insurance Co., 15-cv-9259, 2017 WL 6039975, at * fn. 5 (C.D. Cal. Apr. 14, 2017) (overruling plaintiff's evidentiary objections "as moot because the Court [did] not rel[y] on any evidence to which an evidentiary objection [was] asserted").

The Court also overrules the County's evidentiary objections to Plaintiffs' evidence. First, the County objects to virtually all of Plaintiffs' exhibits for failure to include a stipulation, declaration, or testimony regarding the exhibits' authenticity. (See Dkt. No. 143-1, Def.'s Obj. to Plf. Separate Statement.) "On summary judgment, the non-moving party's evidence need not be in a form that is admissible at trial . . . as long as a party submits evidence which, regardless of its form, may be admissible at trial." Brimberry v. Northwest Mut. Life Ins. Co., 13-cv-00127, 2013 WL 4677592, at *3 (C.D. Cal. Aug. 28, 2013). The Court therefore overrules the County's evidentiary objections based on the exhibits' authenticity because these exhibits, most of which came from the County's own productions, may be admissible at trial. For this same reason, the Court overrules the County's hearsay objections. See Atkinson v. Kofoed, 06-cv-2652, 2008 WL 508410, at *1 (E.D. Cal. Feb. 22, 2008) ("As to [defendant's] arguments about hearsay and authentication, the court finds that [defendant] fails to support these objections with any argument that would justify exclusion of the record.")

Similarly, the Court overrules the County's objections to evidence based on the evidence's probative value purportedly being "outweighed by . . . unfair prejudice." Fed. R. Evid. 403. "In the summary judgment context, a court need not exclude evidence for danger of unfair prejudice, confusion of issues, or any of the other grounds outlined in Federal Rule of Evidence 403." Brimberry, 2013 WL 4677592, at *3.

**III.    Legal Standard**

    **1.     Summary Judgment**

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The moving party has the burden of demonstrating the absence of a genuine issue of material fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). "[T]he burden on the moving party may be

Case 2:17-cv-04239-PA-SK Document 153 Filed 10/27/20 Page 4 of 12 Page ID #:18560

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-04239 PA (SKx) | Date | October 27, 2020 |
|---|---|---|---|
| Title | Trina Ray, et al. v. California Department of Social Services, et al. | | |

discharged by 'showing' - that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The moving party must affirmatively show the absence of such evidence in the record, either by deposition testimony, the inadequacy of documentary evidence, or by any other form of admissible evidence. See Celotex, 477 U.S. at 322. The moving party has no burden to negate or disprove matters on which the opponent will have the burden of proof at trial. See id. at 325.

As required on a motion for summary judgment, the facts are construed "in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, the nonmoving party's allegation that factual disputes persist between the parties will not automatically defeat an otherwise properly supported motion for summary judgment. See Fed.R.Civ.P. 56(c). A "mere 'scintilla' of evidence will be insufficient to defeat a properly supported motion for summary judgment; instead, the nonmoving party must introduce some 'significant probative evidence tending to support the complaint.'" Fazio v. City & County of San Francisco, 125 F.3d 1328, 1331 (9th Cir. 1997) (quoting Anderson, 477 U.S. at 249, 252).

**2.      Employer Under the FLSA**

"A defendant must be an 'employer' of the plaintiff to be liable under the FLSA." Johnson v. Serenity Transportation, Inc., 15-cv-02004, 2017 WL 1365112, at *5 (N.D. Cal. Apr. 14, 2017) (citing Bonnette v. Cal. Health & Welfare Agency, 704 F.2d 1465, 1470 (9th Cir. 1983), abrogated on other grounds by Garcia v. San Antonio Metro. Transit Auth., 465 U.S. 528 (1985)). Under the FLSA, "employer" is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Two or more employers may be "joint employers" for the purposes of the FLSA. Id. "All joint employers are individually responsible for compliance with the FLSA." Bonnette, 704 F.2d at 1469. Whether an entity is a "joint employer" under the FLSA is a question of law. Torres-Lopez v. May, 111 F.3d 633, 638 (9th Cir. 1997).

"The Ninth Circuit has stated that the concept of joint employment should be defined expansively under the FLSA." Maddock v. KB Homes, Inc., 631 F. Supp. 2d 1226, 1232 (C.D. Cal. 2007) (citing Torres-Lopez v. May, 111 F.3d 633, 639 (9th Cir. 1997)). "On the other and, '[t]aken literally and applied in this context [too expansive a definition of employer] would make any supervisory employee, even those without any control over the corporation's payroll, personally liable for the unpaid or deficient wages o[f] other employees." Id. (citing Baird v. Kessler, 172 F. Supp. 2d 1305, 1311 (E.D. Cal. 2001)).

To determine whether a defendant is an employer, courts look to the "economic reality" behind the relationship, and consider the following four factors: whether the alleged employer "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Bonnette, 704 F.3d at 1470.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-04239 PA (SKx) | Date | October 27, 2020 |
|---|---|---|---|
| Title | Trina Ray, et al. v. California Department of Social Services, et al. | | |

These factors are meant to guide a court's analysis, but the ultimate determination must be based "upon the circumstances of the whole activity." Rutherford Food Corp. v. McComb, 331 U.S. 772, 730 (1947); Bonnette, 704 F.2d at 1470 ("The [] factors . . . provide a useful framework for analysis . . . but they are not etched in stone and will not be blindly applied." "As a result, summary judgment may be proper even when some factors favor joint employment and others do not." Johnson, 2017 WL 1365112 at *5. The Ninth Circuit has identified additional factors that might be applicable, depending on the situation. See Torres, 111 F.3d at 639.[1]

**IV.    Analysis**

**1.    Prior Case Law Establishes that the County does not Employ IHSS Providers**

A California Court of Appeal has already held that the County does not employ IHSS providers. Service Employees International Union v. County of Los Angeles ("SEIU") 225 Cal. App. 3d 761 (1990). The Court of Appeal affirmed a trial court's finding that

> The [C]ounty has no authority to screen providers, control who will be a provider, control the number of providers (which is unlimited), or regulate their hours of work, vacations hiring or termination. While the county is required to fix the providers' compensation at not less than the minimum wage, the compensation is paid from the state treasury, with the state assuming responsibility for various deductions for insurance and other benefits.

Id. at 766-77. Under the Direct Payment Mode used by the County, the Court of Appeal affirmed the trial court's finding that the County "exercises no supervisory control over providers." Id. at 766.

The case law by Plaintiffs is distinguishable. In Bonnette, the Ninth Circuit looked at whether Solana County, San Francisco County, Sacramento County, and California are joint employers of IHSS providers. 704 F.2d at 1467. All three counties at issue in Bonnette chose the first option for assisting the State with the IHSS program. In other words, the counties opted to hire providers directly with money provided by the counties. The Ninth Circuit found that the counties, along with the state, "exercised considerable control over the structure and condition of employment," including by, among other things, paying plaintiffs' wages, controlling the rate and method of payment, and maintaining employment records. Id. The Court therefore found that the counties and state's "power over the employment relationship by virtue of their control over the purse strings was substantial," and found that the counties and the state are joint employers of IHSS providers.

---

[1] The only Torres factors that apply here are largely duplicative of the Bonnette factors. Thus, the Court does not address these factors separately.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-04239 PA (SKx) | Date | October 27, 2020 |
|---|---|---|---|
| Title | Trina Ray, et al. v. California Department of Social Services, et al. | | |

Here, in contrast, the County chose the third option, the Direct Payment Mode, for assisting the State with IHSS providers. Under this option the State pays providers directly. As discussed in more detail below, under the Direct Payment Mode the County does not control the purse strings.[2/] This makes the present case distinguishable from Bonnette, and as discussed in more detail below, means that the County is not an employer of IHSS providers.

### 2. The Bonnette Factors

The Court finds that the Bonnette factors weigh in favor of finding that the County is not an employer of IHSS providers as a matter of law.

#### a. Power to Hire and Fire IHSS Providers

The Court first looks to whether the County has "[t]he right, directly or indirectly, to hire, fire, or modify the employment conditions of the workers." Torres-Lopez, 111 F.3d at 640. Here, the Court finds as a matter of law that the County does not have the authority to hire or fire IHSS providers, and that this factor weighs in favor of finding that the County is not an employer of IHSS providers.

Considering all of Plaintiffs' evidence in the light most favorable to Plaintiffs, the facts show that the County plays an administrative roll on behalf of the State and that the County has no power, absent State authority, to hire or fire IHSS providers. Plaintiffs' argue the County plays a large role in the hiring of IHSS providers because "[b]efore providers can work in the County IHSS program, they have to meet the enrollment requirements, which are to attend an in-person orientation, to sign the provider enrollment agreement, to sign the provider responsibility form, to provide identification for identity purposes, and also submit and pass a criminal background check." (Mot. at 2, Helland Decl. Ex. 48, Decl. M. Magallanes).) Plaintiffs argue that because these steps take place at County offices, and providers cannot work in the IHSS program until they completed these steps, this demonstrates that the County has the ability to hire IHSS providers. The Court disagrees.

The undisputed facts show that the County performs these administrative tasks at the direction of the State. The County does not, absent State authority, have the ability to deviate from these onboarding tasks or independently determine whether to hire IHSS providers. All of the onboarding documents are provided by the State, and the orientation for providers is held on behalf of the State at County offices. (See id. 86:4-13 ("It's not that they [the County] themselves are doing a presentation. . . . [The State] give[s] them the preliminary things that are going to happen that day, but it's . . . [the County's] just facilitating.")). That the County helps facilitate the onboarding process on behalf of the State by providing a space for providers to watch training videos and sign some documents does not demonstrate

---

[2/] Plaintiffs also cite to Guerrero v. Superior Court as authority for finding the County employs IHSS providers. 213 Cal. App. 4th 912 (2013). However Guerrero involved a demurrer, not a motion for summary judgment. The court merely held that, at the pleading stage, a county and public authority could be joint employers.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-04239 PA (SKx) | Date | October 27, 2020 |
|---|---|---|---|
| Title | Trina Ray, et al. v. California Department of Social Services, et al. | | |

that the County has any authority to hire providers. See Johnson, 2017 WL 1365112, at *13-14 ("[T]he County's limited involvement in the hiring process does not establish that the County had the power to hire . . . technicians for the purposes of this Bonnette factor," particularly where "there is evidence that the County must comply with certain state . . . requirements."). Once a provider completes all of the State mandated onboarding tasks, the County has no authority to refuse to hire a provider. That the County was "somewhat involved in the hiring process" does not "tip the balance in favor of joint employment." Id. at * 14.

In addition, Plaintiffs argue the County "exercises its power to hire through the PASC. (Mot. at 3.) The County created the PASC in 1997 to "[a]ct as employer of record for collective bargaining purposes," "maintain a registry to assist IHSS recipients in finding eligible providers," "[p]rovide training to both providers and recipients," and "administer new provider enrollment requirements such as background checks." (Mot. at 3, Helland Decl. Ex. 2 PASC's Role After In-Home Supportive Services Statewide Authority Takes Over Collective Bargaining). Plaintiffs argue that if the County chose to end its relationship with PASC, it would resume authority for the PASC's functions, and effectively be an employer of IHSS providers. The Court disagrees that taking over PASC's current duties would render the County an employer.

PASC plays an administrative role similar to that provided by the County. Namely, PASC helps with onboarding, screening, and maintaining a list of available providers. None of these tasks demonstrate that the PASC has any discretionary authority when it comes to hiring and firing providers. See Montoya v. 3PD, Inc., 13-cv-8068, 2014 WL 3385116, at * (D. Ariz. July 10, 2014) (granting summary judgment under the FLSA, and finding that "Home Depot requiring [truck driver] Montoya to pass a criminal background check and meet [Department of Labor] requirements d[id] not establish that it had the power to hire and fire him."). The California Welfare Code specifically states that the power to hire and fire remains with the recipient. CWIC § 12302.25(a) ("Recipients of in-home supportive services shall retain the right to choose the individuals that provide their care and recruit, select, train, reject, or change any provider under the contract mode or to hire, fire train, and supervise any provider under any other mode of service."). That the PASC and the County assist the State with administrative onboarding tasks does not give the PASC or the County any independent authority to hire providers.

The evidence likewise demonstrates that the County does not have the power to fire IHSS providers. Plaintiffs argue the County has "the power to terminate providers if they repeatedly exceeded the number of weekly hours the County approved for the provider's recipient." (Mot. at 3.) Plaintiffs provide evidence showing that IHSS providers receive a "violation" if they worked more than the budgeted overtime hours without County approval, or exceed the limit of seven hours of travel time per month. (Id. at 4, Helland Decl. Ex. 5 Dep't of Public Social Services FLSA Presentation.) However, Plaintiffs' own evidence demonstrates that a county issues violations based solely on the State's guidelines, and the State determined when to fire an IHSS provider after a certain number of violations. (See Mot., Ex. 49, Maria Magallanes Dep. 49:2-11 ("Based on the instructions from the State, if a provider had a second violation, they were sent information they had to review and read."); Id. 60: 7 -

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-04239 PA (SKx) | Date | October 27, 2020 |
|---|---|---|---|
| Title | Trina Ray, et al. v. California Department of Social Services, et al. | | |

61:7 ("[T]he different violations have a time limit. So based on the review and whatever outcome it was as a violation, if it was a fourth violation . . . the State would then terminate that provider."); Ex. 9, Fair Labor Standards Act In-Home Supportive Services Program Presentation at COLA 002950 (noting that CDSS had the ultimate authority to determine whether a violation warranted firing a provider)).

Based on the above, the Court finds as a matter of law that the County does not have the power to hire and fire IHSS providers, and that this Bonnette factor weighs in favor of finding that the County is not an employer of IHSS providers.

### b. Control Over Providers' Work Schedules and Conditions of Employment

Next, the Court finds the County did not exercise control over the structure and conditions of IHSS provider's employment. Even considering all of the County's evidence, the Court finds as a matter of law that IHSS recipients, not the County, controlled the providers' work schedules and conditions of employment. Plaintiffs argue the County "exerted substantial control over providers' work schedules by setting the maximum number of hours, approving deviations from those hours, and adjudicating punishment for exceeding those hours." (Mot. at 21.) The Court disagrees.

Plaintiffs' evidence shows that recipients of IHSS services applied through the County. (Mot. at 5, M. Magallanes Decl. 71:14 - 72:15.) A County social worker would review the recipient's application and perform an in-home assessment of the recipient's needs." (Id. 74:19 - 75:1.) ("Based on the information that the applicant has provided and briefly described to the social worker during the initial call, [the social worker] will go into the home and complete the IHSS application form, asking them different questions on the form, as well as review the 25 services that IHSS provides individually, using the State guidelines they gave us.") The social worker would then assign a "functional rank index" number of 1-5 for each of the services the recipient qualified for, based on an index provided by the State. (Id., 75:2-12.) The State provided hourly task guidelines, which assign a range of eligible hours for each service at each functional ranking. (Id., P. 77:11-16, 78:4-10.) After the social worker finishes their assessment, the social worker inputs data into the State's Case Management and Information Payroll System ("CMIPS"), and the State's CMIPS generates an approval notice that the County then mails to the provider. (Id. 82:18-23.) This approval notice identifies how many hours the recipient can receive. The County social worker cannot make a determination on their own as to the number of hours to give a recipient outside of the index provided by the State. (Id. 76:11 - 77:22.)

In addition, the IHSS sheet provided by the State, and filled out by a County social worker notes that it is the "responsibility of the [r]ecipient to set a schedule within the authorized hours [provided to the [r]ecipient] each month." (Mot. at 6, Helland Decl. Ex. 20.) If the recipient has "more than one provider, it is the responsibility of the [r]ecipient to set a schedule for each provider so that the total hours worked by all providers does not exceed monthly authorized [hours]." (Id.) Further, if a recipient receives services for more than the authorized number of hours, it is the "responsibility of the [r]ecipient to provide payment for those hours." (Id.) The County conducts annual oversight of the recipient's needs. CWIC § 12301.1(b)(1).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-04239 PA (SKx) | Date | October 27, 2020 |
|---|---|---|---|
| Title | Trina Ray, et al. v. California Department of Social Services, et al. | | |

Even taking all of these facts as true, the Court finds that the County's supervision over the number of hours an IHSS recipient needs does not mean the County controls the IHSS provider's work schedule or conditions of employment. Here, the County's own evidence demonstrates that the County provides minimal oversight to ensure IHSS recipients receive adequate care in compliance with State regulations. While the County recommends the number of hours an IHSS recipient needs, the recipient, not the County, is responsible for setting a provider's work schedule, deciding when a provider should come and go, determining how many of the recipient's allotted hours a provider would work, and paying a provider should the recipient want more services than the hours they were allotted through the IHSS program provided. Id. § 12301.6(c)(2)(B). For example, an IHSS recipient given 10 hours of care under the IHSS program can choose to hire one provider who works 5 hours two days a week, one provider who works two hours five days a week, or two providers, one who works five of the recipients' provided hours, and a second who works the other five hours. The number of hours a recipient is provided does not determine a provider's work schedule. See Zhao v. Bebe Stores, Inc., 247 F. Supp. 2d 1154, 1160 (C.D. Cal. 2003) (holding defendant was not liable under the FLSA as a joint employer, finding the defendant did not control plaintiffs' work conditions because the employer's supervisors, not the defendant's personnel, were primarily responsible for the day-to-day management of the employees in that it was they who managed employee assignments, shifts, and work hours.).

Further, while Plaintiffs suggest that a County worker's periodic visits to IHSS recipients' homes demonstrates the County acted as an employer, the Plaintiffs' own evidence shows otherwise. These home visits were simply to ensure that the IHSS program was performed according to regulations set by the State. The home visits were to make sure IHSS recipients' needs were being met and that the recipient didn't require any additional assistance. (Mot. at 7, Holland Decl. Ex. 48, M. Magallanes Decl. P. 99 L. 25 - 100 L. 2 (County workers "go in and make sure the recipient is safe in their home and there [are] not additional needs required.") The use of County employees to ensure State regulations are being met does not demonstrate that the County has control over providers' work places. See Zhao, 247 F. Supp. 2d at 1160-61(clothing store's use of a compliance monitor to ensure garment manufacturer's compliance with labor laws that the Department of Labor required did not indicate control for determining joint employer relationship); Taylor v. Waddell & Reed Inc., 2010 WL 3212136, at *3 (S.D. Cal. Aug. 12, 2010) ("[C]ompliance with legal requirements is not indicative of control for purposes of establishing an employer-employee relationship.").

Finally, Plaintiffs suggest that the fact that the County provided training and resources for IHSS providers about overtime and travel time requirements demonstrates that the County was an employer of IHSS providers. Again, the Court disagrees. Plaintiffs point to several documents the County created in an effort to help train IHSS providers and recipients on regulations regarding overtime hours and travel time hour requirements. (See Mot. at 7-9, Exs. 25-35) These documents simply show that the County provided training materials and guidance to IHSS providers and recipients on behalf of the State. This evidence does not show that the County exercises control over a provider's work schedule or conditions of employment. See Godlewska v. HDA, 916 F. Supp. 2d 246, 259 (E.D.N.Y. 2013) ("Exercising

Case 2:17-cv-04239-PA-SK   Document 153   Filed 10/27/20   Page 10 of 12   Page ID #:18566

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-04239 PA (SKx) | Date | October 27, 2020 |
|---|---|---|---|
| Title | Trina Ray, et al. v. California Department of Social Services, et al. | | |

quality control by having strict standards and monitoring compliance with those standards does not constitute supervising and controlling employees' work conditions . . . .  This is especially true where the quality control's purpose is to ensure compliance with the law or protect clients' safety.").

Based on the above, the Court finds the County does not exercise control over IHSS providers' work schedules and conditions of employment.  Therefore, this second Bonnette factor weighs in favor of finding that the County is not an employer of IHSS providers.

### c. Control Over the Rate and Method of Payment

The third Bonnette factor looks to whether the alleged employer determined the rate and method of the employees' pay.  Here again, the Court finds this factor weighs in favor of finding as a matter of law that the County is not an employer of IHSS providers.

First, Plaintiffs argue the County shares financial responsibility for IHSS providers' wages through a "Maintenance of Effort" ('MOE') arrangement with the State."  (Mot. at 9, Ex. 53 30(b)(6) Dep. of V. Zamirripa 15:4-8 ("So the State gives us every month, for, for our MOE requirement – which is the maintenance of effort apportionment that the State imposes on counties – and in the case of LA County, we receive a monthly billing from the State requesting payment for . . . that.").)  Under this agreement, the State sends the County a bill each month for its share of IHSS costs, which the Department of Social Services pays out of County funds appropriated in an annual budget."  (Id.)  The money goes towards funding the County's share of the program. (Id. 18:19-23.)  In addition, Plaintiffs argue the County "urg[ed] the Board of Supervisors to 'join Alameda and Ventura counties to provide a path to an increased compensation, including health benefits, above $12.00 per hour."  (Mot. at 21.)

The Court finds this evidence does not demonstrate as a matter of law that the County had control over the rate or method of payment for IHSS providers.  First Plaintiffs' own evidence demonstrates that the County helped negotiate a pay increase alongside the IHSS providers' union, and the County's minor role in supporting IHSS providers in adjusting wage rates was subject to State approval, and ultimately paid by the State.  (Holland Decl. Ex. 53, 30(b)(6) Decl. V. Zamirripa 29:9-14 ("[T]he County has the ability to negotiate for wage increases for the providers . . . with the union."))

In SEIU, the California Court of Appeals affirmed the trial court's finding that "[w]hile the [C]ounty [of Los Angeles] is required to fix the provider's compensation at not less than the minimum wage, the compensation is paid from the state treasury, with the state assuming responsibility for various deductions for insurance and other benefits." 225 Cal. App. 3d at 766-77.  Further, the Ninth Circuit has already recognized that the State controls IHSS providers' payroll.  Ray v. County of Los Angeles, 935 F. 3d 703, 712 (9th Cir. 2019) ("Los Angeles is not a constituent member of the Union, but it acted at the direction of the State and had no authority over the payments at issue.").  The facts provided by Plaintiffs merely demonstrate that the County can advocate for the State to provide a pay raise to IHSS providers, but the State ultimately determines whether or not to provide a raise.  Thus, the County, absent State  authority, does not have the discretion to provide pay raises for IHSS providers.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-04239 PA (SKx) | Date | October 27, 2020 |
|---|---|---|---|
| Title | Trina Ray, et al. v. California Department of Social Services, et al. | | |

The case law cited by Plaintiffs does not support finding otherwise. (See Mot. at 21, citing Hardgers-Powell v. Angels in Your Home LLC, 330 F.R.D. 89, 109 (W.D.N.Y. 2019)). In Hardgers-Powell, the Court found that the fiscal intermediary was an employer of Consumer Directed Personal Assistance Program (CDPAP) aides where the fiscal intermediary "processes each CDPAP's wages and benefits, processes all tax and wage withholdings, complies with worker's compensation, disability, and unemployment insurance requirements, and maintains personnel records." Id. The Court found the "fiscal intermediary's responsibilities [went] beyond those of a mere payroll-processing company." Id. "Most importantly, the fiscal intermediary [was] responsible for establishing the amount of each [CDPAP's] wages." Id. (internal quotations omitted). Here, Plaintiffs' own evidence demonstrates the County did not have the authority to set wages absent the State's approval. Thus, the Count finds this factor weighs in favor of finding that the County is not an employer of IHSS providers.

### d. Maintaining Employment Records

The final Bonnette factor considers whether the County maintains employment records for IHSS providers. Plaintiffs argue "[t]he [C]ounty maintained a file on each provider in its offices, first in hard copy form and then in electronic form." (Mot. at 23.) Plaintiffs further argue that when "providers needed to change their address, they called the County." (Id.) Finally, Plaintiffs argue the "undisputed facts show that County employees were directly responsible for entering information about providers into CMIPS." (Id.)

Even assuming all of this is true, this does not demonstrate that the County maintained employment records for purposes of establishing an employer-employee relationship. First, the fact that the County has access to CMIPS, which undisputedly is a centralized State database, "cannot and should not be equated with [the County's] control, either direct or indirect, over Plaintiffs' payroll records, wages, or working conditions." Zhao, 247 F. Supp. 2d at 1160. Similarly, the County's maintenance of background documents does not support a finding that the County is an employer. See Johnson, 2017 WL 1365112, at *17. The State undisputedly requires the County to maintain certain records as part of its quality control function. This is not the role of an employer. See Godlewska, 916 F. Supp. 2d at 262 (finding fourth Bonnette factor did not weigh in favor of employer-employee relationship where the defendant only reviewed certain employment records) (internal quotations omitted). Thus, the Court finds the fourth Bonnette factor weighs in favor of finding that the County is not an employer of IHSS providers.

### Conclusion

Considering all of the evidence submitted by Plaintiffs, the Court finds as a matter of law that the "economic reality" is that the County is not an employer of IHSS providers. The Court therefore denies Plaintiffs' Motion for Summary Judgment and, after providing Plaintiffs an opportunity to respond and submit additional briefing, grants summary judgment in favor of the County. Zhao, 247 F. Supp. 2d at 1161 (denying plaintiffs' motion for summary judgment on issue of joint employer status and finding as a matter of law that defendant was not a joint employer under the FLSA).

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| Case No. | CV 17-04239 PA (SKx) | Date | October 27, 2020 |
|---|---|---|---|
| Title | Trina Ray, et al. v. California Department of Social Services, et al. | | |

    Under the FLSA, only an "employer" can be held liable for failing to pay overtime compensation. 29 U.S.C. § 207. Because the Court finds as a matter of law that the County is not an employer of IHSS providers, the County cannot be held liable for failing to pay overtime compensation. Thus, Plaintiffs cannot state a claim for violation of the FLSA against the County. Therefore, even though the parties' motions are framed as partial motions for summary judgment, the issue of whether the County is an employer of IHSS providers is dispositive of the entire case. <u>Moreau v. Air France</u>, 356 F.3d 942, 946-47 (9th Cir. 2004) (affirming order granting summary judgment where plaintiff failed to establish that defendant was plaintiff's employer). Thus, the Court grants summary judgment in favor of the County. The Court will issue a judgment consistent with this Order.

    IT IS SO ORDERED.